## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONTRARIAN CAPITAL MANAGEMENT, L.L.C., CONTRARIAN CAPITAL FUND I, L.P., CONTRARIAN DOME DU GOUTER MASTER FUND, LP, CONTRARIAN CAPITAL SENIOR SECURED, L.P., CONTRARIAN EM II, LP, CONTRARIAN EMERGING MARKETS, L.P., BOSTON PATRIOT SUMMER ST LLC, POLONIUS HOLDINGS, LLC, EMMA 1 MASTER FUND, L.P., CONTRARIAN FUNDS, L.L.C., and E1 SP, A SEGREGATED ACCOUNT OF EMAP SPC, <br><br> Plaintiffs, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Nos. 21 Misc. 18, 22 Misc. 131 & 22 Misc. 263 |

**OPENING BRIEF IN SUPPORT OF CONTRARIAN'S MOTION FOR AN ORDER
AUTHORIZING A WRIT OF ATTACHMENT *FIERI FACIAS***

Dated:   April 26, 2023

Steven F. Molo (*pro hac vice* pending)
Justin M. Ellis (*pro hac vice* pending)
Lauren F. Dayton (*pro hac vice* pending)
Mark W. Kelley (*pro hac vice* pending)
MOLOLAMKEN LLP
430 Park Avenue, 6th Floor
New York, NY  10022
Tel.: (212) 607-8170
Fax: (212) 607-8161
smolo@mololamken.com

Respectfully submitted,

LANDIS RATH & COBB LLP

/s/ *Rebecca L. Butcher*
Rebecca L. Butcher (No. 3816)
Jennifer L. Cree (No. 5919)
919 Market Street, Suite 1800
Wilmington, DE  19801
Tel.: (302) 467-4400
butcher@lrclaw.com
cree@lrclaw.com

*Counsel for Plaintiffs*

{W0070675.}

# **TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................ 1

SUMMARY OF ARGUMENT .................................................................................................... 2

STATEMENT OF FACTS ........................................................................................................... 3

I.  Contrarian's Lawsuit and Judgments................................................................................ 3

II. The Crystallex and OIEG Attachment Proceedings ......................................................... 4

ARGUMENT ................................................................................................................................ 6

I.  Venezuela and PDVSA Are Collaterally Estopped from Contesting Their Alter-Ego Status ......................................................................................................................... 6

    A.  The Issues Are Identical to the Issues in *OIEG* .......................................................7

    B.  The Issues Were Actually Litigated and Decided by a Final Order ........................9

    C.  Equity Supports Giving *OIEG* Issue-Preclusive Effect .........................................10

II. Delaware Law Permits Attachment of PDVSA's PDVH Shares ..................................... 11

III. The FSIA Permits Attachment of PDVSA's PDVH Shares............................................ 12

    A.  There Is No Jurisdictional Immunity .....................................................................12

    B.  There Is No Attachment Immunity ........................................................................12

IV. Sanctions Do Not Bar Contrarian's Requested Relief...................................................... 14

CONCLUSION........................................................................................................................... 15

# **TABLE OF AUTHORITIES**

Page(s)

### CASES

*In re Brown*,
  951 F.2d 564 (3d Cir. 1991) ................................................................................................10

*Capital Ventures Int'l v. Republic of Argentina*,
  552 F.3d 289 (2d Cir. 2009) ................................................................................................12

*Contrarian Cap. Mgmt., L.L.C. v. Bolivarian Republic of Venezuela*,
  No. 19 Civ. 11018, 2020 WL 5849013 (S.D.N.Y. Oct. 1, 2020) ........................................12

*Cory v. Comm'r of Internal Revenue*,
  159 F.2d 391 (3d Cir. 1947) ..................................................................................................8

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  333 F. Supp. 3d 380 (D. Del. 2018) ..........................................................................4, 12, 13

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  No. 17 Misc. 151, 2018 WL 4026738 (D. Del. Aug. 23, 2018) ............................................4

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  No. 17 Misc. 151, 2021 WL 129803 (D. Del. Jan. 14, 2021) .............................................11

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  No. 17 Misc. 151, 2023 WL 2891452 (D. Del. April 11, 2023) .........................................11

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  932 F.3d 126 (3d Cir. 2019) ....................................................................................4, 11, 12

*Crystallex Int'l Corp. v. PDV Holding Inc.*,
  No. 15 Civ. 1082, 2019 WL 6785504 (D. Del. Dec. 12, 2019) ..................................5, 8, 10

*Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.*,
  251 F. Supp. 3d 758 (D. Del. 2017) ....................................................................................11

*United States ex rel. Doe v. Heart Sol., PC*,
  923 F.3d 308 (3d Cir. 2019) ..............................................................................................6, 7

*In re Fed.-Mogul Glob. Inc.*,
  222 F. App'x 196 (3d Cir. 2007) .........................................................................................11

*Mclaughlin v. Fisher*,
  277 F. App'x 207 (3d Cir. 2008) .......................................................................................8, 9

*Montana v. United States*,
    440 U.S. 147 (1979) ................................................................................................................. 7

*N.Y. Times v. United States*,
    403 U.S. 713 (1971) ............................................................................................................... 10

*OI European Group B.V. v. Bolivarian Republic of Venezuela*,
    419 F. Supp. 3d 51 (D.D.C. 2019) ......................................................................................... 14

*OI European Group B.V. v. Bolivarian Republic of Venezuela*,
    No. 19 Misc. 290, 2022 WL 611563 (D. Del. Mar. 2, 2022) ................................................. 14

*OI European Group B.V. v. Bolivarian Republic of Venezuela*,
    No. 19 Misc. 290, 2023 WL 2609248 (D. Del. Mar. 23, 2023) ..................................... *passim*

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979) ................................................................................................................. 7

*Peloro v. United States*,
    488 F.3d 163 (3d Cir. 2007) ................................................................................................... 10

*Red Tree Invs., LLC v. Petróleos de Venezuela, S.A.*,
    2022 WL 1265516 (D. Del. Apr. 28, 2022) ........................................................................... 14

*Republic of Argentina v. Weltover, Inc.*,
    504 U.S. 607 (1992) ............................................................................................................... 13

*Suppan v. Dadonna*,
    203 F.3d 228 (3d Cir. 2000) ..................................................................................................... 7

*United States v. Stauffer Chem. Co.*,
    464 U.S. 165 (1984) ................................................................................................................. 7

**STATUTES**

8 *Del. C.* § 169 ............................................................................................................................. 11

8 *Del. C.* § 324(a) ........................................................................................................................ 11

10 *Del. C.* § 5031 .......................................................................................................................... 11

28 U.S.C. § 1604 ........................................................................................................................... 12

28 U.S.C. § 1605(a)(1) .................................................................................................................. 12

28 U.S.C. § 1610(a) ................................................................................................................ 12, 13

28 U.S.C. § 1610(a)(1) ............................................................................................................ 12, 13

28 U.S.C. § 1610(c) ................................................................................................ 4, 12, 13, 14

28 U.S.C. § 1963 ................................................................................................................. 4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 69(a)(1) ..................................................................................................... 11

Restatement (Second) of Judgments § 27 cmt. C ............................................................... 8

Contrarian Capital Management, L.L.C., Contrarian Capital Fund I, L.P., Contrarian Dome du Gouter Master Fund, LP, Contrarian Capital Senior Secured, L.P., Contrarian EM II, LP, Contrarian Emerging Markets, L.P., Boston Patriot Summer St LLC, Polonius Holdings, LLC, Emma 1 Master Fund, L.P., Contrarian Funds, L.L.C., and E1 SP, a Segregated Account of EMAP SPC (together, "Contrarian") respectfully submit this brief in support of their motion for an order authorizing a writ of attachment *fieri facias* against shares of PDV Holding, Inc. ("PDVH") owned by Petróleos de Venezuela, S.A. ("PDVSA").

## INTRODUCTION

Contrarian holds three judgments totaling more than $393 million against the Bolivarian Republic of Venezuela ("Venezuela"). The judgments, issued by the Southern District of New York, are registered with this Court. Contrarian seeks a conditional writ of attachment to enforce those judgments against PDVSA, Venezuela's alter ego.

The key issues raised by this motion have been addressed by this Court in other actions brought by different judgment creditors of Venezuela. In prior decisions, it has held: PDVSA is Venezuela's alter ego during the time period relevant here; judgments against Venezuela may be enforced against PDVSA's property, including its shares of PDVH; and conditional attachment of the PDVH shares is permitted under Delaware law, the Foreign Sovereign Immunities Act ("FSIA"), and U.S. Office of Foreign Assets Control ("OFAC") regulations. Thus, this Court has granted the relief sought here to similarly situated creditors.

Venezuela and PDVSA (the "Venezuela Parties") are estopped from relitigating the controlling issues presented here. Conditional attachment should issue.

## SUMMARY OF ARGUMENT

1. The Venezuela Parties are collaterally estopped from relitigating PDVSA's alter-ego status based on this Court's decision in *OI European Group B.V. v. Bolivarian Republic of Venezuela*, No. 19 Misc. 290, 2023 WL 2609248 (D. Del. Mar. 23, 2023) ("*OIEG*").

    a. The alter-ego issues are identical. In *OIEG*, this Court concluded that Venezuela has been PDVSA's alter ego from February 2021 to the present, and that similarly situated judgment creditors could enforce their judgments against PDVSA's assets. Contrarian seeks the same relief over the same period of time.

    b. Those issues were actually litigated and necessarily decided by a final and binding order. The Venezuela Parties had multiple opportunities to contest alter-ego liability and fought that liability on every possible ground. The Court rejected their contentions in a final, appealable order.

    c. Equity supports precluding the Venezuela Parties from relitigating those issues. Requiring creditor-by-creditor proof of alter-ego status is unnecessary now that the Court has lifted the stay on a sale of the PDVH shares. And the Venezuela Parties are not entitled to force each creditor to prove alter-ego status again simply to avoid their obligations.

2. Delaware law permits attachment of the assets here because the PDVH shares are located in Delaware.

3. The Foreign Sovereign Immunities Act also permits attachment.

    a. The Southern District of New York held that Venezuela waived litigation immunity in the debt agreements that gave rise to Contrarian's judgments.

    b. This Court has held, and PDVSA has consistently admitted, that the PDVH shares are "in the United States."

   c. This Court has held that the shares are being "used for a commercial activity," and the Venezuela Parties are collaterally estopped from relitigating that issue.

   d. Venezuela waived attachment immunity in the debt agreements giving rise to Contrarian's judgments.

   e. A reasonable period of time has passed. The Southern District of New York has already held that a reasonable time has passed for one of Contrarian's judgments, and this Court has made similar holdings in other creditors' cases. Those rulings are preclusive. Moreover, Contrarian's judgments have been long outstanding, and Venezuela has made no attempt to pay.

4. This Court has repeatedly held that OFAC sanctions do not preclude the conditional attachment Contrarian seeks. That ruling, too, applies here.

## STATEMENT OF FACTS

**I.  CONTRARIAN'S LAWSUIT AND JUDGMENTS**

Contrarian is the beneficial owner of bonds issued by Venezuela (the "Bonds") under two "fiscal agency agreement[s]," or "FAAs." *Contrarian Capital Mgmt., LLC v. Bolivarian Republic of Venezuela*, No. 19 Civ. 11018 (S.D.N.Y.) ("-11018 Action"), D.I. 37-14 ¶15. Venezuela defaulted on its obligations under the FAAs and Bonds following the Maduro government announcing a restructuring of Venezuela's foreign debt. *See* Decl. of Justin M. Ellis in Support of Contrarian's Motion for a Writ of Attachment *Fieri Facias* ("Ellis Decl."), Exs. 6, 7; -11018 Action D.I. 74 at 2-3. PDVSA, Venezuela's state-owned oil company, defaulted on its unsecured foreign debt, too.[1] Venezuela and PDVSA remain in default today.

---

[1] *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, Nos. 20-3858 & 20-4127 (2d Cir.), D.I. 107 at 10 (admitting that "PDVSA defaulted on all of its debt," except certain secured bonds, around late 2017).

In November 2019, Contrarian sued Venezuela in the Southern District of New York to recover unpaid principal and interest. *See* -11018 Action D.I. 1. In October 2020, the court granted summary judgment and entered judgment against Venezuela. -11018 Action D.I. 74, 81. In May 2021, the court issued a second judgment reflecting attorney's fees and additional unpaid interest. -11018 Action D.I. 119. In October 2021, the court issued a third judgment on certain claims stipulated to by the parties. -11018 Action D.I. 126.[2] In July 2021, the court held that Contrarian may enforce the May 2021 judgment because a reasonable amount of time had passed since that judgment was entered. -11018 Action D.I. 120; *see* 28 U.S.C. § 1610(c).

Contrarian has registered all three judgments with this Court. No. 21 Misc. 18, D.I. 1; No. 22 Misc. 131, D.I. 1; No. 22 Misc. 263, D.I. 1; *see* 28 U.S.C. § 1963. As of the date of this motion, Venezuela owes Contrarian more than $393 million in unpaid principal and interest. Ellis Decl. ¶ 5.[3] Venezuela has not paid any part of Contrarian's judgments, *id.* ¶ 11, and there is no reason to believe that it will do so soon, given its unwavering refusal to pay U.S. creditors.

## II. THE CRYSTALLEX AND OIEG ATTACHMENT PROCEEDINGS

In 2018, this Court granted a motion by Crystallex International Corporation, a judgment creditor of Venezuela, seeking to attach PDVH shares held by PDVSA based on a finding that "PDVSA is the alter ego of Venezuela." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 414 (D. Del. 2018); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17 Misc. 151, 2018 WL 4026738, at *1 (D. Del. Aug. 23, 2018). The Third

---

[2] Pursuant to a stipulation with Venezuela, execution of the May 2021 and October 2021 judgments were stayed until January and May 2022, respectively. *See* -11018 Action D.I. 119 at 7, D.I. 126 at 2-3.

[3] Venezuela continues to miss principal and interest payments on the Bonds. Ellis Decl. ¶ 5. Contrarian reserves the right to seek a larger attachment on the PDVH shares to reflect any new judgments based on those new missed payments.

Circuit affirmed that ruling. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 134 (3d Cir. 2019).

In 2019, this Court denied a motion for an attachment of the PDVH shares brought by another judgment creditor of Venezuela, OI European Group B.V. ("OIEG"). *Crystallex Int'l Corp. v. PDV Holding Inc.*, No. 15 Civ. 1082, 2019 WL 6785504, at *8 (D. Del. Dec. 12, 2019). OIEG had argued that the Venezuela Parties were collaterally estopped from relitigating PDVSA's alter-ego status after *Crystallex*. But the Court rejected that argument for two reasons. *First*, it held the issues in the *Crystallex* case and in OIEG's case were not identical. *Crystallex* considered PDVSA's alter-ego status under the Maduro government in 2018. But by the time OIEG filed its motion in 2019, the Guaidó government was in place and had taken control of PDVSA's U.S. operations. *Id.* at *7. *Second*, it held that equity weighed against collateral estoppel. *Id.* It concluded the political situation in Venezuela in 2019 warranted staying *Crystallex* pending Supreme Court review and requiring Venezuela's creditors to prove alter-ego status on a case-by-case basis. *Id.*

Following that decision, OIEG and three other judgment creditors of Venezuela filed renewed motions for conditional attachments. *OIEG* at *1. Those creditors created an "extensive record" showing PDVSA's alter-ego status under the Guaidó government. *Id.* at 2. Each of their motions were fully briefed by the creditors and PDVSA following an evidentiary hearing in 2021. *Id.* at 1. On March 23, 2023, the Court granted those motions, again finding "that PDVSA has been and is the alter ego of Venezuela, at all pertinent times." *Id.* at *2. The "pertinent time" for purposes of the alter-ego analysis, the Court held, was the time between the day each *OIEG* party filed its motion seeking a writ of attachment (in *OIEG,* as early as February 19, 2021) and the subsequent issuance of the writ (which would not occur until sanctions were lifted). *Id.* at *26. During at least those times, the Court found:

- PDVSA's profits go to Venezuela, which is the sole shareholder in PDVSA;

- Venezuela uses PDVSA's Ad Hoc Board to exercise control over PDVSA's daily activities, and PDVSA's Ad Hoc Board has acknowledged that it operates under "directives" from Venezuela;

- Venezuela directs PDVSA's litigation strategy in its defaulted-debt litigation;

- Venezuela is the real beneficiary of PDVSA's conduct, including because it has used PDVSA's funds for its own legal defense; and

- Adherence to separate identities would allow Venezuela to benefit in U.S. courts while allowing it to avoid its obligations.

*Id.* at *22. Thus, the Court held that the Guaidó administration has been PDVSA's alter ego from at least February 2021 to October 2022, *id.*, and that there was no material factual change for purposes of the alter-ego analysis from October 2022 to the present, *id.* at *19 & n.14.[4]

On April 6, PDVSA filed a notice of appeal from the *OIEG* decision. *OI European Group B.V. v. Bolivarian Republic of Venezuela*, No. 19 Misc. 290 (D. Del.) D.I. 135. PDVSA has also stipulated with two of Venezuela's other judgment creditors to apply *OIEG* to their cases and to allow them conditional attachments subject to PDVSA's appeal of *OIEG*. Order, *Koch Minerals Sarl, et al. v. Bolivarian Republic of Venezuela*, No. 22 Misc. 156 (D. Del.) D.I. 21; *Gold Reserve Inc. v. Bolivarian Republic of Venezuela*, No. 22 Misc. 453 (D. Del.) D.I. 27.

## ARGUMENT

### I. VENEZUELA AND PDVSA ARE COLLATERALLY ESTOPPED FROM CONTESTING THEIR ALTER-EGO STATUS

Collateral estoppel applies when "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final

---

[4] Because the "pertinent time" runs until the writ of attachment is issued, the Court recently observed that the pertinent time for the OIEG creditors "is still open and running." Tr. of Status Conf., *OI European Group B.V.*, No. 19 Misc. 290 (D. Del. March 30, 2023) at 28:3-4.

and valid judgment; and (4) the determination was essential to the prior judgment." *United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 316 (3d Cir. 2019); *see Montana v. United States*, 440 U.S. 147, 153 (1979) (similar). Collateral estoppel may apply "offensively" to bar a defendant from relitigating an issue that it litigated unsuccessfully in a different action against a different party. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).

*OIEG* precludes Venezuela and PDVSA from relitigating PDVSA's alter-ego status for purposes of Contrarian's attachment. *OIEG* involved the same type of creditor as Contrarian, the same defendant, the same issues, and the same requested relief. The alter-ego issues in *OIEG* were identical to the alter-ego issues here, and the Court resolved those issues in a final, binding decision. The Venezuela Parties have had fair opportunity to litigate whether PDVSA is Venezuela's alter ego. And equity supports precluding them from trying again.

    A.    **The Issues Are Identical to the Issues in *OIEG***

Issues are identical between two cases when "'the same general legal rules govern both cases'" and "'the facts of both cases are indistinguishable as measured by those rules.'" *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000); *see Montana*, 440 U.S. at 151, 155 (issues are "identical" if "in substance the same"). Any factual differences between two cases matter for preclusion purposes only if they have "legal significance" in "resolving the issue presented in both cases." *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 172 (1984); *see Montana*, 440 U.S. at 162 (preclusion applies if the "factual and legal context in which the issues of [the new] case arise has not materially altered since [the old case]").

The same legal rules that governed *OIEG* also govern here. Measured by those rules, the facts in Contrarian's case are materially indistinguishable from *OIEG*. In both cases, a judgment creditor of Venezuela has sought to attach the PDVH shares on the ground that PDVSA is an alter ego of Venezuela. *OIEG* at *1. And in both cases, the relevant time period for the alter-ego

analysis is the same. In *OIEG*, the Court reiterated that the "pertinent time" for the alter-ego analysis is "the period between the filing of the motion seeking a writ of attachment and the subsequent issuance and service of that writ" – in that case, from February 2021 through the present. *Id.* at *27; *see* pp. 5-6, *supra*. For that time period, the Court made the precise factual finding that Contrarian seeks – that "PDVSA is the alter ego of the judgment debtor, the Republic of Venezuela." *Id.* at *2, *4, *30.[5]

To be sure, the Court held in its 2019 *OIEG* opinion that the alter-ego issues at stake in the *Crystallex* alter-ego ruling were not identical to the issues in other Venezuelan judgment creditors' cases. *Crystallex*, 2019 WL 6785504, at *7. But that ruling does not apply here. The Court declined, in 2019, to give preclusive effect to the *Crystallex* ruling because it determined whether the Maduro government was PDVSA's alter ego. *Id.* By that time, the Guaidó government had assumed control of PDVSA, so creditors could not rely on *Crystallex*'s earlier findings about the Maduro government. *Id*. But in *OIEG*, the Court held that the Guaidó government and PDVSA have been alter egos since 2021. ***That*** issue is identical to the issue Contrarian seeks to establish.

It also does not matter that Contrarian filed this motion after the *OIEG* decision in March. Less than a month ago, PDVSA acknowledged that there were no "material changes" of fact that would affect that decision. Tr., *OI European Group B.V.*, No. 19 Misc. 290 (D. Del. March 30, 2023) at 29:2-5. Contrarian is also not aware of any material changes that would affect the alter-ego analysis from March 30 through the date of this motion. Importantly, Venezuela's government

---

[5] Venezuela and PDVSA may not raise facts they failed to raise in *OIEG*, such as the removal of Juan Guaidó as interim President. *See OIEG* at *19 n.14 (noting failure to raise this issue). "[I]f the party against whom preclusion is sought did in fact litigate an issue of ultimate fact and suffered an adverse determination, new evidentiary facts may not be brought forward to obtain a different determination of that ultimate fact." *Mclaughlin v. Fisher*, 277 F. App'x 207, 214 (3d Cir. 2008) (quoting Restatement (Second) of Judgments § 27 cmt. C); *see also Cory v. Comm'r of Internal Revenue*, 159 F.2d 391, 392 (3d Cir. 1947) (similar).

continues to direct PDVSA's litigation over its defaulted debt. *See OIEG* at *13. Moreover, as the Court observed on March 30, the "pertinent time" for the *OIEG* creditors "is still open and running." Tr., *OI European Group B.V.*, No. 19 Misc. 290 (D. Del. March 30, 2023) at 28:3-4. In other words, because the "pertinent time" for alter-ego purposes runs until an attachment is actually issued, *OIEG* at *27, and because neither the *OIEG* creditors nor Contrarian will have their attachments issued while sanctions are pending, the "pertinent time" for Contrarian and OIEG is effectively the same. That is even more reason why the issues in Contrarian's case are identical to the issues in *OIEG*.

### B. The Issues Were Actually Litigated and Decided by a Final Order

The alter-ego issues were thoroughly litigated in *OIEG*. Venezuela and PDVSA briefed these issues four times in response to four different creditors' motions. *OIEG* at *1 & n.1. They also participated in an evidentiary hearing in two of the creditors' cases. *Id.* In those briefs and at that hearing, the Venezuela Parties fought alter-ego liability on every possible ground. For example, in *OIEG*, Venezuela and PDVSA contested whether the Maduro government's actions were relevant to the alter-ego analysis; whether Venezuela's interim government exercises extensive day-to-day control over PDVSA; whether OFAC sanctions bar conditional attachments; and whether Delaware law requires creditors to show fraud to pierce PDVSA's corporate veil. *OI European Group B.V. v. Bolivarian Republic of Venezuela*, No. 19 Misc. 290 (D. Del.) D.I. 65 (PDVSA's brief) at 9-20, 21-28, 29-30, 32-35; *see also id.* D.I. 69 (Venezuela's brief adopting these arguments).[6]

---

[6] That is so even if the Venezuela Parties raise new arguments against alter-ego liability. Issue preclusion "results from the resolution of a question *in issue*, not from the litigation of *specific arguments* directed to that issue." *Mclaughlin*, 277 F. App'x at 214 (quotations omitted).

There is also no doubt that this Court actually, necessarily, and finally decided the alter-ego issue. The Court made 32 pages of detailed factual findings supporting its ruling that PDVSA was Venezuela's alter ego. Ellis Decl. Ex. 10 at 4-37. The ruling separately and carefully considered and rejected each of the Venezuela Parties' arguments. *OIEG* at *23-29. And the attachment order the Court issued was a "final and valid judgment" for preclusion purposes because it was final and appealable. Order, *OI European Group B.V. v. Bolivarian Republic of Venezuela*, No. 19 Misc. 290 (D. Del.) D.I. 132; *see Peloro v. United States*, 488 F.3d 163, 176 (3d Cir. 2007) (a "final and appealable" order is a "final and valid judgment").[7]

### C.   Equity Supports Giving *OIEG* Issue-Preclusive Effect

Citing the "same concerns" about the political situation in Venezuela that persuaded it to stay the *Crystallex* case, the Court held in 2019 that equitable principles "disfavor[ed]" giving the *Crystallex* ruling preclusive effect. *Crystallex*, 2019 WL 6785504, at *7. But the Court lifted the stay in *Crystallex* nearly three years ago. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17 Misc. 151 (D. Del.) D.I. 174. Since then, the Court has moved steadily towards a sale of the PDVH shares. Moreover, the Court has allowed several more creditors to attach those shares, including both the *OIEG* plaintiffs and other judgment creditors of PDVSA. Just as the political situation in Venezuela no longer warrants a stay of the PDVH asset sale, it does not warrant refusing to give the Court's alter-ego ruling preclusive effect.

To the contrary, equity and common sense support applying preclusion to avoid the expensive, time-consuming, and pointless task of litigating PDVSA's alter-ego status for the fifth time. *See N.Y. Times v. United States*, 403 U.S. 713, 744 (1971) (Marshall, J., concurring) ("It is

---

[7] It does not matter that the Venezuela Parties have appealed *OIEG*. A decision need not be "final for purposes of appeal" to be preclusive. *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991).

a traditional axiom of equity that a court of equity will not do a useless thing."). Equity also supports preclusion to prevent the Venezuela Parties from causing any further delay. Venezuela is a "highly-recalcitrant judgment debtor" that has taken every step to avoid paying its debts – a strategy that is "something of an affront to the United States judicial system." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17 Misc. 151, 2021 WL 129803, at *18 (D. Del. Jan. 14, 2021).[8] Having fought their creditors tooth and nail, the Venezuela Parties cannot insist on case-by-case alter-ego litigation to drag out repayment any longer. *See In re Fed.-Mogul Glob. Inc.*, 222 F. App'x 196, 202 (3d Cir. 2007) (equity will not reward "dilatory conduct").[9]

## II.     DELAWARE LAW PERMITS ATTACHMENT OF PDVSA'S PDVH SHARES

Rule 69 permits enforcement of a money judgment in accordance with "the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). Delaware law entitles a judgment creditor to attach a debtor's shares in a Delaware corporation through a writ of attachment *fieri facias*. 8 *Del. C.* § 324(a); *Crystallex*, 932 F.3d at 134.

PDVSA is the sole owner of the shares of PDVH, a Delaware corporation. *OIEG* at *1, *3; *see also Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17 Misc. 151 (D. Del.) D.I. 177 (answer by PDVH). By law, those shares are located in Delaware because PDVH is incorporated in Delaware. 8 *Del. C.* § 169; *see Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.*, 251 F. Supp. 3d 758, 762 (D. Del. 2017). Accordingly, Delaware law permits a judgment creditor to attach the PDVH shares to satisfy its judgments. *See* 10 *Del. C.* § 5031; 8 *Del. C.*

---

[8] Even now, those delay tactics are continuing. As the Court just found on March 30, the Venezuela Parties' bid to disqualify the Special Master was "tactical" with "at least a partial goal of further delaying these proceedings." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17 Misc. 151, 2023 WL 2891452, at *4 (D. Del. Apr. 11, 2023).

[9] In the event the Court does not give the *OIEG* alter-ego decision preclusive effect, Contrarian respectfully requests an opportunity to brief the alter-ego issue on its merits.

§ 324(a); *see also OIEG* at *29 (Delaware law permits attachment of the PDVH shares). The Venezuela Parties may not relitigate that holding.

### III. THE FSIA PERMITS ATTACHMENT OF PDVSA'S PDVH SHARES

To attach the PDVH shares, the FSIA requires Contrarian to show that Venezuela does not enjoy "jurisdictional immunity" from suit and that the PDVH shares do not enjoy "attachment immunity" from execution. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 394, 395 (D. Del. 2018), *aff'd*, 932 F.3d 126 (3d Cir. 2019); *see* 28 U.S.C. §§ 1604, 1610. Contrarian satisfies both tests.

#### A. There Is No Jurisdictional Immunity

Under the FSIA, foreign states can waive their immunity from suit "explicitly or by implication." 28 U.S.C. § 1605(a)(1). A waiver is explicit if it is "clear and unambiguous." *Capital Ventures Int'l v. Republic of Argentina*, 552 F.3d 289, 293 (2d Cir. 2009) (internal quotation omitted). The Southern District of New York expressly held that Venezuela waived its sovereign immunity for purposes of Contrarian's suit. *Contrarian Cap. Mgmt., L.L.C. v. Bolivarian Republic of Venezuela*, No. 19 Civ. 11018, 2020 WL 5849013, at *4 (S.D.N.Y. Oct. 1, 2020). Contrarian then obtained three judgments against Venezuela. *See* pp. 3-4, *supra*. And once a party establishes an exception to sovereign immunity and obtains a merits judgment, it need not establish another exception to register the judgment in another court and enforce it. *Crystallex*, 932 F.3d at 137. This Court has jurisdiction over Contrarian's attachment motion.

#### B. There Is No Attachment Immunity

The FSIA permits court-ordered attachment of sovereign property in aid of execution of a judgment where (1) the sovereign holds that property in the United States, (2) the property is being used for a commercial activity, (3) the sovereign has waived its immunity from attachment in aid

of execution, and (4) a reasonable period of time has elapsed following the entry of judgment. 28 U.S.C. § 1610(a), (a)(1), (c). Each of these requirements is satisfied here.

### 1. *Venezuela Holds the PDVH Shares in the United States*

As noted above in Section II, pp. 11-12, *supra*, PDVSA is the 100% owner of the PDVH shares, and those shares are located in Delaware.

### 2. *The PDVH Shares Are Being Used for a Commercial Activity*

The phrase "commercial activity" in the FSIA captures the "distinction between state sovereign acts, on the one hand, and state commercial and private acts, on the other." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 613 (1992). In *OIEG*, this Court held that the PDVH stock is being used for a commercial activity because "'Venezuela – through PDVSA – uses the shares to appoint directors, approve contracts, and pledge assets as security for PDVSA's debt.'" *OIEG* at *18 (quoting *Crystallex*, 333 F. Supp. 3d at 417-18). As explained above, pp. 6-11, *supra*, PDVSA and Venezuela are collaterally estopped from relitigating that holding.

### 3. *Venezuela Has Waived Attachment Immunity*

In each FAA, Venezuela "irrevocably agree[d] not to claim and irrevocably waive[d]" immunity from attachment in aid of execution in any "Related Proceeding." *See* Ellis Decl. Exs. 8 § 14, 9 § 14. The "Related Proceeding[s]" for which Venezuela waived immunity include "any suit, action or proceeding against [Venezuela] or its properties, assets or revenues with respect to this Agreement, any Security or a coupon appertaining thereto." *Id.* § 14(a).

### 4. *A Reasonable Amount of Time Has Passed Since Entry of Judgment*

PDVSA and Venezuela are also estopped from denying that "a reasonable period of time has elapsed following the entry of judgment." 28 U.S.C. § 1610(c). The Southern District of New York already found, over Venezuela's objection, that Section 1610(c) was satisfied for the May 2021 judgment after four months had passed without any payment. -11018 Action D.I. 120. That

ruling applies to Contrarian's other two judgments, which have been outstanding for 30 and 18 months, respectively. And this Court has repeatedly held that similar or even shorter amounts of time are reasonable. *See, e.g.*, *OIEG* at *10 (finding 14 months reasonable); *Red Tree Invs., LLC v. Petróleos de Venezuela, S.A.*, 2022 WL 1265516, at *2 (D. Del. Apr. 28, 2022) (finding 4 months reasonable).

In any event, Contrarian satisfies this test on the merits. Section 1610(c)'s "reasonable period of time" test is meant to allow a foreign government enough time to arrange to pay a judgment. *OI European Grp. B.V. v. Bolivarian Republic of Venezuela*, 419 F. Supp. 3d 51, 54 (D.D.C. 2019). Accordingly, when deciding whether a given period is "reasonable" under § 1610(c), courts consider what procedures are necessary for the government to pay a judgment and whether the government is actively taking steps to pay or trying to evade payment. *OI European Grp. B.V. v. Bolivarian Republic of Venezuela*, No. 19 Misc. 290, 2022 WL 611563, at *9 (D. Del. Mar. 2, 2022). Here, Venezuela has had ample time to pay Contrarian's judgments but has instead chosen to fight payment at every turn. The Court should find that a reasonable amount of time has passed for Contrarian to enforce its judgments against the PDVH shares.

**IV.    SANCTIONS DO NOT BAR CONTRARIAN'S REQUESTED RELIEF**

This Court has repeatedly held that it may award a conditional attachment on the PDVH shares. *OIEG*, at *27. The Court should grant Contrarian the same relief that it has granted to other creditors – an order authorizing the issuance of a writ of attachment and ordering the Clerk of Court to affix its original signature and seal on the writ, but staying the issuance or service of the writ until OFAC authorizes such a writ, sanctions are lifted, or "some further order with different instructions issues." Order, *OI European Group B.V. v. Bolivarian Republic of Venezuela*, No. 19 Misc. 290 (D. Del.) D.I. 132 at 2-3.

## CONCLUSION

The Court should (1) find that the PDVH shares are subject to attachment to satisfy Contrarian's judgments; (2) authorize the issuance of a writ of attachment *fieri facias*; and (3) order the Clerk of Court to affix its original signature and seal on the writ but not to issue the writ until the Court has received evidence that OFAC has authorized the issuance and service of such writ or removed the prohibition and sanctions that prevent the issuance and service of such a writ, or until some further order with different instructions issues from the Court.

| | |
|---|---|
| Dated:   April 26, 2023 | Respectfully submitted, |
| | LANDIS RATH & COBB LLP |
| Steven F. Molo (*pro hac vice* pending)<br>Justin M. Ellis (*pro hac vice* pending)<br>Lauren F. Dayton (*pro hac vice* pending)<br>Mark W. Kelley (*pro hac vice* pending)<br>MOLOLAMKEN LLP<br>430 Park Avenue, 6th Floor<br>New York, NY  10022<br>Tel.: (212) 607-8170<br>Fax: (212) 607-8161<br>smolo@mololamken.com | /s/ *Rebecca L. Butcher*<br>Rebecca L. Butcher (No. 3816)<br>Jennifer L. Cree (No. 5919)<br>919 Market Street, Suite 1800<br>Wilmington, DE  19801<br>(302) 467-4400<br>butcher@lrclaw.com<br>cree@lrclaw.com |

*Counsel for Plaintiffs*